UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA

                                        CRIMINAL NO. 3:19CR180 (RNC)

    v.

FRANK CARR                              May 8, 2020

GOVERNMENT'S RESPONSE TO DEFENDANT'S RENEWED
MOTION FOR RELEASE FROM CUSTODY

On May 7, 2020, Carr filed a renewed motion for an emergency order allowing his immediate release from custody. Doc. 1050. That same day, the Court ordered the Government to respond as to its position and to briefly articulate the reasons underlying that position. Doc. 1052.

In brief, the Government continues to oppose the defendant's temporary release substantially for the reasons stated in its April 14, 2020 response to the defendant's first motion for temporary release (*see* Doc. 952) and because, as stated by the Court in its April 18, 2020 Order, "continued detention is warranted to protect the public from the possibility of further wrongdoing by the defendant." Doc. 962.[1]

While Title 18, United States Code, Section 3142(i) -- cited by the defendant -- provides for the possibility of temporary release for "a compelling reason," Carr has the burden of establishing the compelling reasons for release under this provision. *See, e.g., United States v. Wicker*, 2020 WL 212422 at *2 (D. Conn. May 5, 2020); *United States v Flores*, 2020 WL 2088126 at *2 (S.D.N.Y. Apr. 30, 2020). Moreover, "[i]n considering

---

[1] The Pretrial Services Report of April 14, 2020, recommended the defendant's continued detention. The Government understands from U.S. Probation Officer Meghan Chester that she has reviewed the defendant's most recent motion and maintains that there is no condition or combination of conditions to reasonable assure the safety of the community.

whether there is a 'compelling reason' for a defendant's release under § 3142(i), a court must balance the reasons advanced for such release against the risks that were previously identified and resulted in an order of detention.  In turn, whether temporary release under § 3142(i) is proper requires the individualized analysis of the facts of each case." *United States v. Ellison*, 2020 WL 1989301 at *3 (S.D.N.Y. Apr. 27, 2020) (quoting *United States v. Chambers*, 2020 WL 1530746, at *1 (S.D.N.Y. Mar. 31, 2020).[2]

After careful consideration of the individualized facts of this case, the Government respectfully submits that Carr has not established a compelling reason why his temporary release is necessary and which outweighs the seriousness of the offenses charged, the penalties he faces, his lengthy and serious criminal record, and repeated violations of court orders.  *See* Doc. 952 at *4-8 (setting forth further details regarding Carr's long history of violent crimes, narcotics offenses, and repeated violations of supervision).  In short, Carr has proven himself contemptuous of conditions of supervision and unsupervisable by the courts. In that connection, Carr's record includes absconding from a halfway house, and violating parole and probation.  Perhaps most to the point, Carr dealt drugs while under supervision as part of the sentence imposed by Judge Covello for being a felon in possession of a firearm and serving time in prison.  And most recently, he trafficked narcotics as charged in the Second Superseding Indictment after serving another federal prison sentence and while on supervised release as part of the sentence imposed by Judge Thompson.  Even more galling, he deceived the Court and Probation by this drug trafficking while participating in Support

---

[2] The Government understands that on or about August 6, 2019, a warrant for violating supervised release was lodged as a detainer, although it appears that the defendant may not have yet been presented on the matter.  The Government notes that where a defendant is on supervision at the time he committed the instant offense, "[t]he burden of establishing by clear and convincing evidence that the person will not flee or pose a danger to any other person or to the community rests with the person."  Fed. R. Crim. P. 32.1(a) (6); see *also*

Court, for which he received a one-year reduction in his sentence as a reward for his "successful" completion of the program. *See* No. 3:12CR53 (AWT), Doc. 88.

Carr's initial April 13 motion alleged that that he was particularly susceptible to complications should he contract the Covid-19 infection at Wyatt because he was in his "mid-50's and suffers from high blood pressure, kidney disease, drug addiction, and heart and lung disease." Doc. 945 at *1. Some eight days after this Court's ruling denying his motion for temporary release, Carr apparently saw Dr. Edward A. Blanchette, a physician associated with the Donald E. Wyatt Detention Facility, regarding a heart condition. Carr obtained from that physician a referral, attached as Exhibit C to the defendant's most recent motion, which he claims shows that he has health conditions that render him particularly susceptible to the Covid-19 virus. In particular, the referral confirms that Carr has a heart condition.

However, the doctor also states that Carr "is not in CHF [Chronic Heart Failure] & is clinically stable at this time." While suggesting that Carr could benefit from "episodic Cardiology evaluation," the Government respectfully submits that there is nothing in the records which establish that Carr's conditions currently put him at substantially greater risk than other detainees. The referral, which Carr apparently contends provides new information, in fact seems to be based on older records that Dr. Blanchette obtained from a 2018 evaluation of the defendant at Yale New Haven Hospital and Carr's pediatric health records dating back to the early 1980s. This referral, as far as the Government can tell, simply confirms that which the Government did not dispute and the Court certainly considered in ruling on the original motion—that is that Mr. Carr has a heart condition. What the defendant fails to acknowledge is that the very same doctor who made such a finding concludes that he is clinically stable at this time.

Fed. R. Crim. P. 46(d).

It is thus misleading and inaccurate to state, as the defendant does, that "Mr. Carr received recently a report by Wyatt Medical that indicates the need to release Mr. Carr…." The report in no way makes such a suggestion or reaches such a conclusion.  And although counsel describes Mr. Carr's situation as raising "grave medical concerns," the record and the doctor's report belie such a conclusion.  The documentation provided in this renewed motion for release provides no new information which would lead the Government to withdraw its opposition to his release.

While the Government recognizes the risk posed by the Covid-19 pandemic as to all detainees, it must assess that risk in light of the defendant's medical condition and against the danger his release will pose to the public.  Based on the reasons stated in our initial response, reasons that are not undermined or mitigated in any way by defendant's latest submissions, and for the reasons stated herein, the Government respectfully requests that the defendant's second attempt for temporary release,[3] like his first, be denied.

Finally, the defendant cavalierly avers that there is "evidence" that the Wyatt facility is "unable to monitor" Mr. Carr.  To the contrary, although the pandemic has created challenges for everyone, including inmates, guards and prison administrators, the facility at Wyatt has quite successfully taken measures to address these concerns while insuring the safety and well-being of the inmates and the guards (discussed further below).

Moreover, the Government is unaware of why Wyatt would not be in a position to address any medical situation that may arise, with a full-time medical staff (as evidenced by the referral from Dr. Blanchette) available seven days each week, and access to outside care available as needed free of charge to Carr.  Indeed, as the Court knows, Wyatt has been

---

[3] On August 6, 2019, Carr filed a motion for an immediate bail hearing. Doc. 317. After the Government responded (doc. 357), the Court granted Carr's request to withdraw his

proactive and responsive in addressing Covid-19.   As of yesterday, the Government has been advised that Wyatt has tested nearly all of its staff members and have identified only four who have tested positive for Covid-19, for whom the facility is currently conducting contact tracing.  With respect to detainees, 13 have tested positive, and Wyatt has transferred them to a specialized negative pressure environment until the infection clears.  Additionally, all new intakes are being both tested for Covid-19 and quarantined for 16 days.  Wyatt is working with the Rhode Island Department of Health to review testing, monitoring and housing protocols. *See also* Doc. 952 (describing additional health and safety protocols that have been instituted at Wyatt).

Carr's medical conditions and request for temporary release cannot be divorced from his criminal exposure as a second offender career criminal, his horrible criminal record, his deceptive past performance while under supervision, and the need for this Court to "protect the public from the possibility of further wrongdoing by the defendant."  Doc. 962.  Neither Carr's age nor claimed physical infirmities have deterred him in the slightest from continuing on his life-long pattern of serious criminal conduct and violations of supervision.

Accordingly, the Government respectfully submits that the defendant's motion should be denied.

Respectfully submitted,

JOHN H. DURHAM
UNITED STATES ATTORNEY

/s/

ANTHONY E. KAPLAN
ASSISTANT UNITED STATES ATTORNEY
FEDERAL BAR NO. CT08083
157 CHURCH STREET; 23rd FLOOR

---

motion.  Doc. 360, 362.

NEW HAVEN, CT 06510
203-821-3700

<u>C E R T I F I C A T I O N</u>

     I hereby certify that on May 8, 2020, the foregoing Response was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's system.

/s/
ANTHONY E. KAPLAN