UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| | CRIMINAL NO. 3:19CR180 (RNC) |
| v. | |
| FRANK CARR | November 17, 2020 |

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO TRANSFER TO A
MEDICAL FACILITY OR TEMPORARY RELEASE FROM CUSTODY

On November 14, 2020, Carr filed a motion (Doc. 1521) seeking his transfer to a medical facility or, alternatively, for release of custody for the purposes of rehabilitation after surgery.

1. Prior Detention and Release Litigation

Carr was ordered detained on his arrest on July 10, 2019. Doc. 93  On August 8, 2019, Carr filed a motion for bond (Doc. 317), which he withdrew (Doc. 360), after the Government filed its response (Doc. 357).

On April 13, 2020, Carr filed a motion for release from custody (Doc. 945), which the Government responded to on April 14, 2020 (Doc. 952). On April 16, this Court denied the defendant's motion without prejudice. Doc. 962. On May 7, 2020, Carr filed a second motion for release (Doc. 1050), which the Government responded to the next day (Doc. 1056). This Court denied the defendant's motion on May 27, 2020, ruling:

> The defendant's renewed motion for release from pretrial detention at Wyatt based on the risk posed to his health by the novel coronavirus is denied for substantially the same reasons stated by the Government in its response. As the Government correctly argues, the defendant has not demonstrated a compelling reason justifying his release. Defendant's renewed request is unsupported by a medical opinion showing that he is at greater risk for severe illness were he to contract COVID-19 than other detainees. CDC guidance concerning the heightened risk to persons in the defendant's age group who have his medical conditions provides some support for the defendant's concern that he faces such a heightened risk. But this is insufficient to establish a compelling reason justifying release for this defendant. The defendant's history of engaging in

1

> criminal conduct while on supervised release, indeed, even while participating in support court, is very troubling. Given this history, it is unfortunately the case that the defendant might well revert to criminal activity were he released now. To establish a compelling reason justifying his release, despite the risk that he would revert to criminal activity, the defendant must demonstrate that he faces a likelihood of irreparable harm is he is not released. He has not made that showing. Accordingly, the renewed motion for release is hereby denied.

(Doc. 1100). The defendant filed a motion for reconsideration on June 4, 2020 (Doc. 1110), and a Motion to Renew Detention Hearing on June 18, 2020 (Doc. 1176), which the Government responded to that same day. (Doc. 1180). On June 25, 2020, the Court held a hearing via Zoom, at the conclusion of which time it again denied the defendant's motion for release. Doc. 1208).

On September 17, 2020, Carr filed an Emergency Motion to Transfer and Medical Treatment seeking to be returned to the Donald W. Wyatt Detention facility ("Wyatt") so he could continue his medical treatment there. (Doc. 1403). The Government replied the following day that Carr had been transferred (Doc. 1405), and the Court denied the motion that same day as moot. (Doc. 1408).

On October 28, 2020, Carr pleaded guilty before the Hon. Robert M. Spector to Count Four of the Third Superseding Indictment charging him with possession of 28 grams of cocaine base with intent to distribute, in violation of Title 18, United States Code, Sections 841(a)(1) and (b)(1)(B)(iii), and Carr also admitted violating his supervised release in No. 3:12CR53 (AWT), by committing a federal narcotics crime while on supervision. This Court accepted Judge Spector's Findings and Recommendations on November 2, 2020 (Doc. 1501). Sentencing is presently scheduled for January 22, 2021.

On November 14, 2020, Carr filed the instant motion seeking to be transferred to a medical facility or, alternatively, to be released home to recuperate from surgery.

2. Carr's Medical Situation

The Government understands that Wyatt and the United States Marshals Service ("USMS") arranged for Carr to be seen and evaluated by specialists at Brigham and Woman's Hospital, and that the doctors there recommended that Carr undergo surgery.  To that end, the Government further understands that the USMS authorized Carr to undergo the recommended surgery, which was arranged by the Wyatt medical unit and scheduled for October 30, 2020.  However, the Government further understands that when Carr was advised on that he would be transferred to the hospital for surgery, Carr refused to go.  Accordingly, the surgery was cancelled.  Although the motion stated that Carr is "scheduled for heart surgery within the next six weeks," the surgery has not, to the Government's knowledge, been rescheduled.

3. The Current Motion

In his November 14, 2020 motion, Carr seeks to be transferred to a medical facility or released from custody for the purposes of rehabilitation following his surgery which, he claims, is scheduled "within the next six weeks."  According to Carr, he "had been scheduled for surgery about two or three weeks ago, but . . . delayed surgery until such time as he could obtain access to a medical facility for his rehabilitation.  Mr. Carr is concerned due to the fact that Wyatt Detention, where he is currently being housed, is not a hospital facility and has an increased number of Covid-19 cases which places [him] at an extreme risk to his health while recuperating after surgery."

While Carr states that Wyatt "is simply not equipped to care adequately for [his] rehabilitation and unique medical needs," it is clear that Wyatt's medical unit has been monitoring and caring for Carr (and, to the Government's knowledge, has coordinated his consultations and surgery), and there is no evidence offered that it would not continue to

manage his care after surgery.[1]  Moreover, Wyatt is in close proximity to the specialist(s) who would perform the surgery and engage in follow-up examinations and treatment.

The decision where to house detained defendants rests with the USMS.  The Government understands from the USMS that it does not have access to Bureau of Prisons medical facilities, such as Devens, and, accordingly, is not in a position to arrange for his transfer there or another BOP medical facility.  Although the USMS has confirmed with Wyatt medical unit that it believes it is capable of caring for Carr post-operatively, the USMS is willing to explore transfer to a Connecticut Department of Correction medical facility after surgery pending transfer to the BOP, although the Government notes Carr's prior concerns regarding continuity of care (*see* doc. 1403).[2]

Carr's request for temporary release pursuant to 18 U.S.C. § 3147(i), assumes that he would undertake and receive appropriate and safe after surgery care "at home."  In any event, the Government remains deeply concerned about the safety of the community were the Court to grant that relief.  Indeed, since Carr's last motion for release, the reasons for continuing detention have only grown stronger.

First, he has pleaded guilty to a controlled substance offense under 18 U.S.C. § 3143(f)((1)(B), by which, pursuant to 18 U.S.C. § 3143(a), the Court "shall order" him detained unless it determines that the defendant can show that there is a substantial likelihood that a motion for acquittal or new trial will be granted or an attorney for the government has recommended that no sentence of imprisonment be imposed on the person, *and*  there is clear

---

[1] Carr is correct that Wyatt has experienced an increase in the number of positive cases of COVID-19, and currently reports 50 active cases there among detainees and 18 active cases among staff.  *See* 1-20-mc-4 JJM (D. RI. Nov. 16, 2020).  Of course, so too, unfortunately has Connecticut seen an increase in cases with a current positivity rate of 5.38.  *See* https://data.ct.gov/stories/s/COVID-19-data/wa3g-tfvc (last accessed November 17, 2020).  Moreover, as the Court is well aware, Wyatt has taken -- and continues to -- take steps to mitigate and address the effects of the coronavirus pandemic.  *See* 1-20-mc-4 JJM (D. RI. Nov. 16, 2020), at Attachment A.

[2] The doctor's letter accompanying his motion states that following discharge, Carr will need to "access

4

and convincing evidence "that the defendant is not likely to flee or pose a danger to the safety of any other person or the community." The defendant cannot make such the requisite showings.

When he is sentenced on January 21, 2021, Carr faces a mandatory minimum sentence of ten-years and up to life, and the Government believes will be subjected to sentencing under the Career Criminal Guidelines given his prior convictions in State Superior Court for Manslaughter in the First Degree with a Firearm and in this Court for Possession of Heroin with Intent to Distribute which, it calculated in the plea agreement, would yield an advisory guideline range of 360 months to life. *See* Doc. 1493 at 4.[3]

Second, Carr has admitted that he committed this serious federal crime while on supervised release. *Id*. at 3. Indeed, he engaged in drug trafficking while in this Court's Support Court and after "successfully" graduating from that program, showing a remarkable ability for deception.

Finally, the Grand Jury found probable cause to charge Carr in Count Seven of the Third Superseding Indictment with corruptly attempting to obstruct, influence, and impede the trial of this matter by asking a potential witness to provide false exculpatory information, in violation 18 U.S.C. § 1502(c)(2) and (j).

While the Government understands Carr's desire to be released "home for rehabilitation," it continues to believe that doing so would pose an undue risk to the community. Without reiterating Carr's history and characteristics as detailed in the Government's prior responses to the defendants' motions for release, his history is one of unremitting serious criminal conduct, and a proven track record of non-compliance with

---

to medical care and that he is housed in a facility that has a medical hospital in house."
   [3] In the plea agreement, Carr has reserved his right to challenge that his prior convictions placed him within the career offender guideline, as well as reserving his right to request a downward departure and/or non-

Court-imposed conditions of supervision and release. Carr's concerns are outweighed by the risks to the community were he to be released.

In brief, the Government continues to oppose the defendant's temporary release substantially for the reasons states in its April 14, 2020 response to the defendant's first motion for temporary release (see also Doc. 357) and because, as stated by the Court in its April 17, 2020 and May 27, 2020 Orders, "continued detention is warranted to protect the public from the possibility of further wrongdoing by the defendant." Doc. 962.

Accordingly, the Government respectfully submits that that the motion should be denied.[4]

Respectfully submitted,

JOHN H. DURHAM
UNITED STATES ATTORNEY

/s/

ANTHONY E. KAPLAN
ASSISTANT UNITED STATES ATTORNEY
FEDERAL BAR NO. CT08083
Anthony.kaplan@usdoj.gov
157 CHURCH STREET; 23rd FLOOR
NEW HAVEN, CT 06510
203-821-3700

---

guideline sentence.
  [4] The Government has suggested to defense counsel that the defendant consider seeking to advance the sentencing date so that he could be designated to a BOP medical facility. The Government is would be willing to assist the United States Probation Office (which already has a presentence report from Carr's most recent federal conviction) to that end.

6

C E R T I F I C A T I O N

I hereby certify that on November 17, 2020, the foregoing Response was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

/s/
ANTHONY E. KAPLAN